J-S25020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY RICE | : | |
| | : | |
| Appellant | : | No. 584 EDA 2022 |

Appeal from the PCRA Order Entered January 24, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0906231-1996,
CP-51-CR-0906241-1996

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY RICE | : | |
| | : | |
| Appellant | : | No. 585 EDA 2022 |

Appeal from the PCRA Order Entered January 24, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0906231-1996,
CP-51-CR-0906241-1996

BEFORE: NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 28, 2023**

Timothy Rice (Appellant) appeals from the order dismissing his second petition filed pursuant to the Post Conviction Relief Act (PCRA).[1] After careful review, we affirm.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

The Supreme Court of Pennsylvania previously summarized the facts underlying Appellant's convictions:

On September 1, 1996, Labor Day, a group of family members gathered at Jay's Big Shot Bar, which is located on the corner of Narragansett Street and Stenton Avenue in the City of Philadelphia. The family included Bernard Jackson (Jackson), his fiancee Ramona Caldwell, James Jefferson (Jefferson), his fiancee Marie Williams (Williams), Randall Rogers (Rogers), his fiancee Evette Bell, and Gilbert Green (Green).

At approximately 1:00 a.m., Appellant entered the bar with two friends. Appellant and his friends ordered two forty-ounce beers from bartender, Jerry Fluellen. Appellant talked with Sheila Holloway and then moved to an area near the middle of the establishment.

A verbal confrontation erupted between one of Appellant's friends and Green. The situation ended quickly and the two men shook hands. Then, Jefferson joined the group of men. At some point, the bartender asked Appellant and his friends to take the argument outside or drop it. Green told Jefferson that there was not a problem and then walked toward the bar and sat down, turning his back to Appellant and the door that lead to Stenton Avenue (Stenton door). Some of the family members gathered at the bar opposite the Stenton door. Several individuals sat in a row with Rogers to the right of Green and an empty barstool between Rogers and Jackson.

As Appellant backed out of the Stenton door, he pulled a gun from his pocket and fired into the establishment. He shot Jackson in the back, killing him. Appellant also shot Rogers twice in the lower back. A bullet grazed the chest of Williams, who had returned to her place at the bar just before the shooting. Both Rogers and Williams survived. Jefferson, who had been standing behind Appellant in the doorway of the Stenton door, ran outside. Appellant shot Jefferson in the back, which caused his death.

Appellant ran across the street and got into a car. Then, Appellant proceeded to his sister's apartment at 2835 Winton Street. Someone from Appellant's family called the police. At 3:30 a.m.

that same night, police arrived at the apartment and arrested Appellant….

*Commonwealth v. Rice*, 795 A.2d 340, 344-45 (Pa. 2002).

As a result of the incident, the Commonwealth charged Appellant with numerous crimes, including first-degree murder. The trial court convened a non-jury trial on October 6, 1997.

> The Commonwealth called twenty witnesses, four of whom saw Appellant fire a gun into a crowded bar. When Appellant testified, he admitted that he pointed his weapon toward people and "shot until [his] gun was empty." (N.T. 10/10/97, p. 159). Appellant shot both of the victims, who were unarmed, in their backs. Additionally, when the police arrested Appellant at his sister's apartment several hours after the shooting, the officers discovered a .357 magnum revolver containing three live rounds and two spent .357 caliber shells in Appellant's pocket. Appellant admitted that the .357 magnum was his gun. Police Officer Abdur-Rahin, of the Firearms Identification Unit of the Philadelphia Police Unit, testified that a bullet found on the floor of the bar was fired from Appellant's gun. Also, Officer Abdur-Rahin stated that a bullet, which had been removed from one of the victims that had survived the shooting, had been fired from Appellant's gun….

*Rice*, 795 A.2d at 346. Appellant testified that he acted in self-defense. N.T., 10/10/97, at 159.

On October 16, 1997, the trial court convicted Appellant of two counts each of first-degree murder and aggravated assault, and one count each of recklessly endangering another person, possessing an instrument of crime, carrying a firearm without a license, and carrying a firearm on a public street or public property in Philadelphia.[2] The PCRA court explained:

---

[2] *See* 18 Pa.C.S.A. §§ 2502, 2702, 2705, 907, 6106, 6108.

- 3 -

Following his convictions, Appellant received a penalty phase hearing before a jury …. The jury found the aggravating circumstances outweighed the mitigating circumstances and returned a sentence of death with respect to the first-degree murder convictions. On December 17, 1998, at the conclusion of the hearing, [Appellant] was sentenced to death on CP-51-CR-0906231-1996 [(No. 6231)] for the first-degree murder of Bernard Jackson. [Appellant] was also sentenced to death on CP-51-CR-0906241-1996 [(No. 6241)] for the first-degree murder of James Jefferson, as well as consecutive terms of not less than 10, no more than 20 years of incarceration [for] the aggravated assault of Rodgers and Williams, and a term of not less than 2½, nor more than five years of incarceration to be served concurrently with the sentence for aggravated assault (of Rogers), for carrying a firearm in Philadelphia….

[Appellant] filed a timely direct appeal on December 28, 1998. On February 20, 2002, the Pennsylvania Supreme Court affirmed the judgment of sentence. *Commonwealth v. Rice*, 795 A.2d 340 (Pa. 2002). [Appellant] filed a timely motion for re-argument, which was denied on April 18, 2002.

Appellant filed a timely petition for writ of *certiorari* in the U.S. Supreme Court which was denied on March 24, 2003. *Rice v. Pennsylvania*, 538 U.S. 926 (2003)….

PCRA Court Opinion, 8/22/22, at 1-2.

On July 11, 2003, Appellant timely filed his first PCRA petition. On January 27, 2012, the PCRA court, with the agreement of the Commonwealth, vacated Appellant's death sentences for each murder conviction and imposed concurrent sentences of life without parole. This Court affirmed the PCRA court's order. *Commonwealth v. Rice*, 83 A.3d 1056 (Pa. Super. 2013) (unpublished memorandum).

Appellant *pro se* filed the instant PCRA petition on April 23, 2019. Appellant filed an amended *pro se* PCRA petition on July 3, 2019. The PCRA

court appointed Rania M. Major, Esquire (Attorney Major), to represent Appellant. However, following *pro se* correspondence from Appellant, the PCRA court replaced Attorney Major with James Lloyd, Esquire (Attorney Lloyd). On December 3, 2021, Attorney Lloyd filed an application to withdraw from representation and a no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

On December 20, 2021, the PCRA court issued Pa.R.Crim.P. 907 notice of its intention to dismiss Appellant's petition without a hearing. Appellant filed a *pro se* response opposing dismissal. On January 24, 2022, the PCRA court granted Attorney Lloyd's application to withdraw and dismissed Appellant's petition. Thereafter, Appellant appealed.[3] Appellant, represented by Brian F. Humble, Esquire (Attorney Humble), filed a Pa.R.A.P. 1925(b)

---

[3] On February 17, 2022, Appellant filed *pro se* two notices of appeal, pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), which were docketed in this Court at Nos. 584 and 585 EDA 2022. Each notice contains both trial court docket numbers but no identifying mark for a particular docket number on either notice of appeal. Nonetheless, we will not quash Appellant's appeal. **See Commonwealth v. Johnson**, 236 A.3d 1141, 1148, (Pa. Super. 2020) (approving the filing of separate but identical notices of appeal as compliant with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018)). Appellant is proceeding *in forma pauperis*. Pursuant to this Court's policy regarding multiple **Walker** appeals, the instant appeals were consolidated, *sua sponte*, by order of March 30, 2022.

concise statement of matters complained of on appeal.[4]  The PCRA court has

filed an opinion.

Appellant presents the following issues for our review:

> 1.    Did the [PCRA] court err when it dismissed the Appellant's PCRA petition as untimely under 42 Pa.C.S.A. § 9545(b)?
>
> 2.    Did the [PCRA] court err when it dismissed the Appellant's PCRA petition as untimely under 42 Pa.C.S.A. § 9543(a)?
>
> 3.    Did the [PCRA] court err in not holding an evidentiary hearing?

Appellant's Brief at 3 (capitalization modified).

In reviewing an order denying a PCRA petition, our standard of review

"is limited to examining whether the PCRA court's determination is supported

by the evidence of record and whether it is free of legal

error." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super.

2019) (citation and internal quotation marks omitted).  "The PCRA court's

credibility determinations, when supported by the record, are binding on this

Court; however, we apply a *de novo* standard of review to the PCRA court's

legal conclusions." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa.

2014) (citation omitted).

Appellant's first two issues implicate the PCRA's timeliness requirement.

A PCRA petition must be filed within one year of the date the petitioner's

judgment of sentence became final.  42 Pa.C.S.A. § 9545(b)(3).  The one-

---

[4] Attorney Humble represents Appellant in this appeal.

year time limit is jurisdictional; a court may not address the substantive merits of an untimely petition. *Commonwealth v. Callahan*, 101 A.3d 118, 121 (Pa. Super. 2014). "Without jurisdiction, we simply do not have the legal authority to address the substantive claims." *Commonwealth v. Lewis*, 63 A.3d 1274, 1281 (Pa. Super. 2013).

A petitioner may overcome the PCRA's time-bar if he pleads and proves one of the statutory exceptions set forth in 42 Pa.C.S.A. § 9545(b)(1). *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017). The exceptions are "(1) interference by government officials in the presentation of the claim; (2) newly discovered facts; and (3) an after-recognized constitutional right." *Commonwealth v. Brandon*, 51 A.3d 231, 233-34 (Pa. Super. 2012); *see also* 42 Pa.C.S.A. § 9545(b)(1)(i-iii). **A petition invoking an exception to the jurisdictional time-bar must be filed within one year of the date that the claim could have been presented**. 42 Pa.C.S.A. § 9545(b)(2) (effective December 24, 2018). If a petitioner fails to invoke a valid exception, the court lacks jurisdiction to review the petition or provide relief. *Spotz*, 171 A.3d at 676.

Appellant does not dispute the untimeliness of his petition.[5] Appellant claims he established the newly discovered facts exception to the timeliness

_____

[5] Although Appellant was resentenced in 2014, his resentencing does not "reset the clock for the calculation of the finality of the judgment of sentence for purposes of the PCRA where the relief granted in the first petition neither
*(Footnote Continued Next Page)*

requirement based on (a) Christopher Eric Scott's (Scott) confession to the murders; (b) the indictment of officers and detectives involved in the underlying investigation; and (c) newly-discovered police misconduct disclosures (PMDs). Appellant's Brief at 11-12. We address each claim, as the timeliness of Appellant's PCRA petition implicates our jurisdiction. *See Callahan*, 101 A.3d at 121.

The newly discovered facts exception requires the petitioner to establish two elements: "the facts upon which the claim is predicated were unknown to the petitioner," and those facts "could not have been ascertained by the exercise of due diligence." 42 Pa.C.S.A. § 9545(b)(1)(ii).

Appellant first argues Scott's confession to the murders was "in the possession of government officials … in 2008 and not conveyed until 2009." Appellant's Brief at 11. Appellant argues:

> This aspect of Appellant's claim was delayed past the pre-trial discovery period because the Commonwealth did not conduct a diligent investigation of the incident, and further, was withheld during a period between 2008 and 2009, just prior to the [dismissal of his first PCRA petition.] Additionally, the facts upon which this claim is predicated were unknown to the Appellant prior to trial, and subsequently the claims [were] dismissed without a hearing in [his first PCRA proceeding].

*Id.* (capitalization modified).

_____

restored a petitioner's direct appeal rights nor disturbed his conviction, but, rather, affected his sentence only." *Commonwealth v. McKeever*, 947 A.2d 782, 785 (Pa. Super. 2008) (quotation marks omitted).

- 8 -

Appellant acknowledges he became of aware of Scott's confession in 2009, **three years** prior to the dismissal of his first PCRA petition. In 2009, a PCRA petitioner was required to plead and prove he filed his petition within 60 days of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2) (2009). Appellant did not present this claim within 60 days of discovering the confession, or during the three years his PCRA petition was pending. As such, Appellant claim of a newly discovered fact based on Scott's confession fails. ***See id.***

Appellant next presents as a newly discovered fact, the indictment of several Philadelphia police officers and detectives. Appellant's Brief at 11. Appellant asserts that prior to May 12, 2019, "there were several indictments and investigations of Philadelphia police officers." ***Id.*** Appellant claims that the Philadelphia Police Department released 72 police officers for misconduct in June 2019. ***Id.*** at 11-12. Appellant states, "in 2014, Philadelphia police officers were federally [i]ndicted for corruption charges." ***Id.*** at 12. According to Appellant, the police department and district attorney's office "had a policy of non-disclosure regarding police misconduct, which was certainly within the time period of Appellant's trial." ***Id.***

In his PCRA petition, Appellant claimed he discovered the indictment of officers "[b]y May 3, 2019 in [the] law library at SCI Frackville by all police officers and detectives that had been investigate [*sic*] and indicted for falsifying evidence in other cases and mine." Amended PCRA Petition, 7/3/19,

at 3. However, Appellant failed to identify the officers involved in his case, the misconduct they allegedly committed, or the evidence allegedly falsified. Appellant's bald allegations fail to establish the newly discovered fact exception to the PCRA's timeliness requirement. *See* 42 Pa.C.S.A. § 9545(b)(1), (2).

Finally, Appellant claims newly discovered facts based on PMDs forwarded to him in 2018. Appellant's Brief at 12. Appellant claims the officers named in the PMDs "were all named in, or involved in the investigation, arrest and conviction of [A]ppellant." *Id.* As Attorney Lloyd stated in his no-merit letter, one of the officers named in the PMDs testified at Appellant's trial: Detective John Rossiter (Detective Rossiter). No-Merit Letter at 17. Appellant raised this newly discovered fact within one year of its discovery, as required by 42 Pa.C.S.A. § 9545(b)(2). We conclude Appellant meets the "newly discovered fact" exception to the PCRA's timeliness requirement. *See id.* Accordingly, we address Appellant's after-discovered evidence claim based on the PMD involving Detective Rossiter.

To establish an after-discovered evidence claim:

[A] petitioner must prove that (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

*Commonwealth v. Cox*, 146 A.3d 221, 228 (Pa. 2016) (citations and quotation marks omitted).

- 10 -

Appellant argues the PMD constituted after-discovered, exculpatory evidence "that would have changed the outcome of the trial." Appellant's Brief at 15. Appellant argues:

[T]his evidence could not have been obtained by Appellant through reasonable diligence, is not corroborative or cumulative, would not be for credibility only, and would likely result in a different result.

Because the [PCRA] court failed to consider these issues as after-discovered evidence under 42 Pa.C.S.A. § 9543(a)(2)(vi), the Superior Court should vacate and remand the dismissal of [] Appellant's PCRA.

*Id.*

Contrary to Appellant's argument, the PCRA court addressed and rejected Appellant's claim of after-discovered evidence:

In the matters *sub judice*, the after[-]discovered evidence at issue is a PMD regarding Detective Rossiter which indicates that an Internal Affairs Division ("IAD") investigation initiated in 2000 accused [Detective] Rossiter of improperly stopping and detaining a man, and of illegally searching the property the man entered without probable cause or exigent circumstances. The IAD found these two allegations of misconduct to be sustained. [Detective] Rossiter testified at [Appellant's] trial.

As [] Detective Rossiter's misconduct was not disclosed until 2019, it is possible [Appellant] could satisfy prongs one and two of the four-prong test for an after-discovered evidence claim. However, to obtain relief on an after-discovered evidence claim, the petitioner must show the evidence "… will not be used solely to impeach the credibility of the witness." [**Commonwealth v.**] **Foreman**, 55 A.3d [532,] 537 [(Pa. Super. 2012)]. Any propose[d] witness could only testify [that D]etective Rossiter illegally stop[ped] them [and] and search[ed] [h]is premises in 2000. There has not been any evidence that a witness can provide new evidence concerning [Detective] Rossiter's conduct in the matters *sub judice*. Therefore, the third and fourth prongs of the test for after-discovered evidence cannot be met, and there would

- 11 -

not be a finding of any newly discovered evidence meritorious under the PCRA.

PCRA Court Opinion, 12/22/22, at 7-8 (unnumbered). The record supports the PCRA court's determination and its legal conclusion is sound. We therefore affirm based on the PCRA court's reasoning. *See id.* Appellant's claim of after-discovered evidence merits no relief.

In his third and final issue, Appellant argues the PCRA court erred in not conducting an evidentiary hearing. Appellant's Brief at 15. Appellant asserts his claims involve "unresolved factual issues material to [his] conviction." *Id.* at 16.

Where a petitioner has not set forth issues of material fact, the PCRA court need not hold an evidentiary hearing. *Commonwealth v. Hart*, 199 A.3d 475, 481 (Pa. Super. 2018). Appellant asserted no genuine issues of material fact warranting the grant of an evidentiary hearing. Under these circumstances, we discern no error in the PCRA court's dismissal of Appellant's amended PCRA petition without a hearing.[6] *See id.*

Order affirmed.

---

[6] A petition requesting an evidentiary hearing must include a certification by each intended witness outlining the substance of their proposed testimony, and a copy of any material documentary evidence. 42 Pa.C.S.A. § 9545(d)(1)(i); Pa.R.Crim.P. 902(A)(15). Appellant's petition and amended petition included no such certification.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2023